IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, | Case No. |
| Plaintiff, | |
| v. | |
| EATING RECOVERY CENTER GROUP INSURANCE PLAN, | |
| Defendant. | |

## COMPLAINT

Plaintiff, JANE DOE, herein sets forth the allegations of her Complaint against Defendant EATING RECOVERY CENTER GROUP INSURANCE PLAN:

## JURISDICTION

1. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff relating to benefits under an employee benefit plan regulated and governed by ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan. Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

**THE PARTIES**

2. Plaintiff, Jane Doe, is and was at all relevant times a resident of Chicago, Illinois, located in the Northern District of Illinois. Thus, venue is proper in this judicial district pursuant to 29 U.S.C § 1132(e)(2).

3. Defendant Eating Recovery Center Group Insurance Plan (the "Plan") is an employee health benefit plan with its principal place of business in the State of Illinois, authorized to transact and transacting business in this judicial district, the Northern District of Illinois, and can be found in the Northern District of Illinois. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

4. At all times relevant, Plaintiff was a covered participant under the Plan.

5. Anthem Blue Cross and Blue Shield ("Anthem") acted as claims administrator of the Plan.

**FIRST CAUSE OF ACTION**

**FOR DENIAL OF PLAN BENEFITS UNDER ERISA**

6. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

7. Plaintiff is a young woman with a history of mental illness including eating disorder, major depressive disorder, and generalized anxiety disorder.

8. On March 15, 2021, Jane was admitted to residential treatment at Oliver Pyatt Center, an in-network provider with Anthem.

Anthem's Denial and Plaintiff's Expedited Appeal

9. On April 2, 2021, Anthem denied benefits for residential treatment on the basis that treatment was not medically necessary. Anthem claimed that Jane did not need strict staff

supervision of all meals and bathroom use and therefore did not qualify for residential treatment under guidelines applied by Anthem.

10. Oliver Pyatt Center requested an expedited appeal on Jane's behalf.

11. On April 5, 2021, Anthem denied the appeal claiming that its first decision was correct because "you were not at risk for serious harm that you needed 24-hour care."

12. Jane remained in residential treatment at Oliver Pyatt Center based on the recommendation of her treatment team. Jane discharged from residential treatment on May 11, 2021.

Plaintiff's Request for an External Review

13. On April 5, 2022, Jane submitted a request for an external review and provided treatment records and a letter of support from Jane's therapist at Oliver Pyatt Center.

14. The treatment records show Jane was at risk for serious harm due to her eating disorder behaviors, self-harming in residential treatment and urges to self-harm, increased depression and anxiety, and suicidal ideation and intent.

15. The treatment records document that Jane's treatment met the American Psychiatric Association Guideline for Treatment of Patients with Eating Disorders ("APA Guidelines) based on the following symptoms:

> [F]requent refusal of meals and snacks; noncompliant despite highly structured environment; unable to abstain from behaviors despite close staff supervision; unmotivated; unable to use coping skills; disengaged; limited insight into severity of eating disorder; intrusive comorbid symptoms which are not well managed and interfere with eating disorder treatment including depression and anxiety.

16. The treatment records repeatedly state that Jane "needs supervision at all meals or will engage in restricting of eating."

17. Jane's behaviors at meals including crying during and after meals, slow pace, small bites, expressing suicidal intent, urges to restrict, restricting food, picking at food, not completing meals, and not hydrating well.

18. Jane had increased suicidal ideation and depression and anxiety. She was at risk of serious harm to herself as she had "[r]eports thoughts of killing herself by starvation. Relates would not try to kill herself in any other way as she is afraid of pain or suffering. Admits to fear of living. Not completing meals or hydrating well."

19. Jane's eating disorder and depression were telling her "to starve herself to death." Jane wished she were dead or would not wake up, thought of killing herself, thought of what she might do to kill herself, had intention of acting on these thoughts, and started to work out details of how to kill herself. Jane could not engage in a plan to kill herself because she was in structured 24/7 residential treatment.

20. Jane had urges to self-harm "most days," stating "I either need to restrict or self harm but either way I need to feel pain." (*i.e.* "I just want to self harm – that is my reset button")). She scratched her wrists with her nails which was her method if she had no other implements to use for self-harm.

21. Jane's therapist in residential treatment at Oliver Pyatt Center wrote a letter in support of the request for external review, stating: "During her treatment at OPC, we advocated for insurance coverage and were shocked when insurance denied coverage with her presentation of restricting food intake, high self-harm urges, as well as intense suicidal ideations. According to the American Psychiatric Association Level of Care Guidelines, [Jane] met criteria for the

residential level of care in medical status, suicidality, motivation, co-occurring disorders, structure needed for eating and weight and environmental stress."

22.	Anthem did not respond to Jane's request for an external review.

### Plaintiff's Post-Service Claim and Appeal

23.	Following Jane's discharge, Oliver Pyatt submitted post-service claims for Jane's residential treatment.

24.	In an Explanation of Benefits dated October 13, 2021, Anthem denied benefits for Jane's residential treatment.

25.	On April 5, 2022, Jane appealed the denial of post-service claims for Jane's residential treatment and provided treatment records and letter of support from Jane's primary therapist at Oliver Pyatt Center.

26.	Anthem did not respond to Jane's appeal.

27.	Plaintiff incurred the cost of her treatment at Oliver Pyatt Center and paid approximately $70,000 to Oliver Pyatt Center for her residential treatment.

28.	Plaintiff exhausted all appeals available under the Plan.

29.	Defendant wrongfully denied Plaintiff's claim for benefits, in the following respects, among others:

> (a)	Failure to authorize and pay for mental health benefits as required by the Plan at a time when Defendant knew Plaintiff was entitled to such benefits under the terms of the Plan;
>
> (b)	Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the denial of Plaintiff's request for mental health benefits;

(c) After Plaintiff's requests for benefits were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect her requests along with an explanation of why such material is or was necessary;

(d) Failure to properly and adequately investigate the merits of Plaintiff's requests for mental health benefits and/or provide alternative and medically appropriate courses of treatment;

(e) Failure to provide Plaintiff with a full and fair review pursuant to 29 C.F.R.§ 2560.501-1(h)(3)(iii) by failing to consult with health care professionals who have appropriate training and experience in the field of medicine involved in the medical judgment;

(f) Failure to thoroughly and independently evaluate Jane and her treatment records prior denying the request for benefits; and

(g) Failure to respond to Jane's request for external review and post-service claim appeal.

30. Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied Plaintiff's requests for mental health benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

31. Following the denial of benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on her part to be performed.

32. As a proximate result of the denial of benefits, Plaintiff has been damaged in the amount of the medical bills incurred for her treatment, approximately $70,000.00, the total sum to be proven at the time of trial.

33. As a further direct and proximate result of this improper determination regarding her request for mental health benefits, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

34. Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce her rights under the terms of the Plan and to clarify her rights to future benefits under the terms of the Plan.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. Payment of health care benefits due to Plaintiff under the Plan;

2. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

3. Payment of prejudgment and post judgment interest as allowed for under ERISA; and

4. For such other and further relief as the Court deems just and proper.

Dated: May 23, 2022

Respectfully submitted,

/s/ Mark D. DeBofsky

_____

Mark D. DeBofsky
Attorneys for Plaintiff
Jane Doe

Mark D. DeBofsky
DeBofsky Sherman Casciari Reynolds, P.C.

7

150 North Wacker Street, Suite 1925
Chicago, Illinois 60606
Telephone: (312) 561-4040
Fax: (312) 929-0309
Email: mdebofsky@debofsky.com
Email: mcasciari@debofsky.com